1

2

3

4

5          UNITED STATES DISTRICT COURT

6          DISTRICT OF NEVADA

7          * * *

8   ACCESS INTEGRATED NETWORKS,        )
9   Inc., a Georgia Corporation         )          2:06-cv-594-BES-RJJ
                                        )
10         Plaintiff,                   )     REPORT &   RECOMMENDATION
                                        )        OF UNITED STATES
11                                      )        MAGISTRATE JUDGE
    v.                                  )     Plaintiff's Motion for Default
12                                      )     Judgment (#9)
                                        )
13  CONSUMER DIRECT OF AMERICA,         )
    a Nevada Corporation.               )
14                                      )
           Defendant.                   )
15  _____ )

16         This matter came before the Court for a hearing on Plaintiff's Motion for Default Judgment

17  (#9) pursuant to Rule 55 of the Federal Rules of Civil Procedure. The referral to the undersigned

18  Magistrate Judge was made pursuant to 28 U.S.C. § 636(b)(1)(B). Order (#12). The Court has

19  considered the Plaintiff's Motion (#9), Plaintiff's Supplemental Brief (#17) and the testimony and

20  evidence presented at the hearing.

21                            **BACKGROUND**

22         Access filed its Complaint (#1) against CDA on May 12, 2006.  CDA failed to respond to

23  the complaint; therefore, Access filed a Motion for Default Judgment (#9).  Further inquiry was

24  required to establish the amount due and owing upon default judgement.  This matter was referred

25  by the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), to determine the two issues outlined in

26  Order (#12).  First, the Court must determine the "reasonableness of the amount of the settlement";

27  and second, "whether CDA is liable for the attorney's fees and costs incurred by Access in the

28  amount claimed by Access." Order (#12) at 3.  Further, the Court was instructed to make proposed

1    findings of fact and recommendations as to the appropriate amount of default judgment that should
2    be awarded in this case.

3                                                  **FACTS**

4            Plaintiff, Access Integrated Networks, Inc. (Access), is a Georgia corporation providing
5    telecommunication services to customers in: Georgia; Alabama; Florida; Kentucky; Louisiana;
6    Mississippi; North Carolina; South Carolina; and Tennessee.   Defendant, Consumer Direct of
7    America (CDA) is a Nevada corporation that provided  telemarketing services to various companies
8    in several states.  TeleCom Consultants, Inc. (TCI), is an Alabama corporation and independent sales
9    distributer which performs marketing telecommunication services for Access.   In 2002, TCI
10   suggested to Access that it would be beneficial to obtain CDA's telemarketing services.   Meetings
11   between the three companies occurred in Nevada and an agreement (TCI/CDA Agreement) was put
12   into place between CDA and TCI; whereby, CDA was to undertake telemarketing efforts to sell
13   Access' products and services to potential customers.  CDA agreed to act in an ethical manner in all
14   of its telemarketing efforts including compliance with all laws, rules, and regulations related to
15   telemarketing and telecommunication services.

16           During the course of CDA's telemarketing efforts, various laws and regulations were violated
17   by CDA which constituted breaches of the TCI/CDA Agreement.  Many of these violations included:
18   false misrepresentations to potential customers; enrolling people into Access accounts without the
19   person's consent; false advertising; and falsely representing the relationship that Access maintained
20   with its competitors. One of Access' competitors, Bell South Telecommunications, Inc. (BellSouth),
21   filed a civil action in the United States District Court for the Northern District of Georgia,  against
22   Access alleging fraudulent conduct by the telemarketers engaged on Access' behalf.  The evidence
23   generated in the BellSouth litigation showed that between April 1, 2002, and August 3, 2002,
24   BellSouth lost 23,815 lines to Access, and approximately 10,502 or (44.1%) were lost due to the
25   sales by CDA. Moreover, BellSouth alleged that more than $5.7 million in net profits was lost due
26   to CDA telemarketer's misconduct.   In December of 2003, Access settled with BellSouth for
27   approximately $4 million.   The BellSouth litigation gave rise to a Federal Communications
28   Commission (FCC) investigation. Due to the misconduct of CDA, Access paid a $155,000.00 fine

1   to the FCC for CDA's violations of FCC regulations.

2       The Court conducted a hearing to determine an appropriate amount of damages Access

3   should recover for: (1) the BellSouth Settlement; (2) the FCC fine imposed; and (3) the related

4   attorneys' fees and costs.   The total amount of damages originally sought by Access was

5   $2,448,297.35. However, after the hearing, Access provided the Court with a Supplemental brief

6   informing the Court that it was no longer requesting attorneys' fees incurred during an arbitration

7   between Access and TCI.   The new total that Access requests is $2,358,752.54.

8                                    **DISCUSSION**

9       Federal Rule of Civil Procedure 55(b) states, in pertinent part:

10          Judgment by default may be entered as follows:

11          (1) By the Clerk. When the plaintiff's claim against a defendant is for
            a sum certain or for a sum which can by computation be made certain.
12          . .if the defendant has been defaulted for failure to appear. . . [or]
            (2) By the court. In all other cases the party entitled to a judgment by
13          default shall apply to the court therefor . . . If, in order to enable the
            court to enter judgment or to carry it into effect, it is necessary to take
14          an account or to determine the amount of damages or to establish the
            truth of any averment by evidence or to make an investigation of any
15          other matter, the court may conduct such hearings or order such
            references as it deems necessary and proper . . .
16

17   Fed. R. Civ. P. (55)(b).  A "district court clerk can enter a default judgment only if 'the plaintiff's

18   claim against a defendant is for a sum certain . . . and if the defendant has been defaulted for failure

19   to appear.'"  Franchise Holding II, LLC. v. Huntington Rest.'s Group, Inc., 375 F.3d 922, 927 (9th

20   Cir. 2004) (citations omitted).  Moreover, "a claim is not a sum certain unless no doubt remains as

21   to the amount to which a plaintiff is entitled as a result of the defendant's default."  Franchise

22   Holding, 375 F.3d at 929.  Or in other words, a "claim capable of simple mathematical computation"

23   must be set forth in order to grant a default judgment.  Franchise Holding, 375 F.3d at 929.  If the

24   claim is not capable of being calculated by a simple mathematical computation then the Court is

25   required to conduct a hearing in order to determine the appropriate amount of damages. Fed. R. Civ.

26   P. (55)(b)(2).

27       Sometimes "it is necessary for [a] defendant to present independent evidence of the

28   reasonableness of [the] amount" of judgment during the hearing.  Byrd v. Keene Corp., 104 F.R.D.

10, 12 (D. Pa. 1984). This also applies to a plaintiff presenting evidence to the Court when the defendant has failed to appear in the case. In Byrd, the Court concluded that the plaintiff was only entitled to a reasonable amount of damages determined by showing that the "plaintiff would have been entitled to at least that amount in damages if plaintiff had established [defendant's] liability at trial. Byrd, 104 F.R.D. at 12. In the instant case, the District Court has ordered Access to show it would be entitled to the claimed amount of damages and attorneys' fees and costs sought.

**Plaintiff's Actual Damages**

In determining the amount of damages, under contract law, it is fundamental that the nonbreaching party be placed in as good a position as if the contract had been preformed. Colorado Env'ts v. Valley Grading Corp., 105 Nev. 464, 470-71 (Nev. 1989). Just as two parties are liable to each other under a contract, "a promisor owes a duty of performance to any intended beneficiary of the promise and 'the intended beneficiary may enforce the duty.'" Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 1999) (citing RESTATEMENT (SECOND) OF CONTRACTS § 304 (1981)). The Restatement (Second) of Contracts § 347 provides:

> Subject to the limitations stated in §§ 350-53, the injured party has a right to damages based on his expectation interest as measured by
>
> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
> (c) any cost or other loss that he has avoided by not having to perform.

(1981).

Here, Access provided sufficient evidence to the Court showing that, as a third-party beneficiary, it is entitled to 44.1% of damages paid to resolve the BellSouth case and FCC matter. The Court finds that Access would have established liability at trial to show that BellSouth lost 23,815 lines to Access and that 10,502 or (44.1%) of these lines were lost due to misconduct by CDA's telemarketers. The total loss by Access is $1,832,355.00. This number is calculated by adding: (1) CDA's alleged liability portion (44.1%) of the BellSouth settlement totaling

1   $1,764,000.00;[1] with (2) CDA's alleged liability portion (44.1%) of the FCC fine totaling

2   $68,355.00.[2]  The amount of the settlement was reasonable.

3   **Commissions Paid by Access**

4           Access also claims the amount of $337,629.75 for the present value of commissions paid to

5   TCI attributable to CDA Telemarketers.  Access was not required to plead these commissions in its

6   complaint; however, it was required to give CDA fair notice that it was bringing claims for

7   commissions paid to TCI and the grounds upon which they rested.  During the litigation, Access did

8   not plead for the commissions paid to TCI or notify CDA that it was seeking the commissions paid

9   to TCI as damages.  In Access' Motion for Default Judgment (#9), Access sought a total amount of

10  related damages compromised from only the following four (4) components:

11              (I) the lines lost by BellSouth from 4/1/02 to 8/3/02 . . ., in the
                amount of $34, 317; (II) the portion of the BellSouth Settlement
12              attributable to CDA telemarketers, in the amount of $2,250,897.70;
                (III) the portion of the FCC settlement attributable to CDA
13              telemarketers, in the amount of $107,854.79; and (IV) the cost of
                arbitration with TCI, in the amount of $89,544.81.[3]
14

15   Plaintiff's Motion for Default Judgment (#9) at 10.  Only in Plaintiff's Supplemental Brief (#17),

16  provided to the Court the day of the hearing, was the Defendant and the Court put on notice that

17  Access was seeking the commissions it paid to TCI.  The Court finds that Access failed to adequately

18  give CDA fair notice of the commission claim and the grounds upon which it rested.

19          Even if Access had given CDA adequate notice that it was seeking reimbursement for

20  commissions paid to TCI, Access is still not entitled to the commissions paid to TCI because Access

21  failed to provide sufficient evidence to prove to the Court that it would be entitled to this amount if

22  Access had established CDA's liability at trial.  Although an arbitrator awarded TCI $337,629.75

23  for unpaid commissions, the arbitrator's decision does not adequately show that Access is entitled

24  to seek this amount from CDA.  Motion for Default Judgement (#9-2) at 11-12.  Access failed to

25  give the Court a detailed analysis of the connection between the commissions paid and the

26      [1] $1,764,000.000 is a 44.1% part of the total $4 million amount paid by Access to BellSouth.

27      [2] $68,355 is a 44.1% part of the total $155,000.00 amount paid by Access to the FCC.

28      [3] This $89,544.81 is no longer be sought for damages by Access.

1   misconduct of CDA.  No evidence was provided to show the commission that was given for each

2   line lost due to CDA's misconduct.   The Court is required to analyze the commissions claim similar

3   to  the  other  damage  components.    Access  mentioned  in  passing  that  it  was  entitled  to  the

4   commissions paid to TCI because the arbitrator awarded this amount to TCI.  Due to the lack of

5   sufficient evidence, the Court should  not grant the commissions paid by Access to TCI.  Access has

6   failed to provide the Court with sufficient evidence to determine that it would have been entitled to

7   at least this amount if Access had established CDA's liability at trial.

8   **Attorneys' Fees and Costs**

9          Attorneys' fees are not generally awarded to the prevailing party unless the contract provides

10  for them; the Court then awards the fees by deciding which are reasonable.  See generally

11  RESTATEMENT (SECOND) OF CONTRACTS § 356.   The TCI/CDA Agreement states that:

12                  Each of the parities shall be responsible for its own negligent actions
                    and those of its respective officers, employees and agents . . .
13
                    If any party deemed it necessary to bring suit or other action . . . the
14                  prevailing party(s) in such action shall also receive from the other
                    party all costs associated with such action, including by not limited
15                  to, reasonable attorney's [sic] fees, travel expenses, and $50.00 per
                    man hour invested by the prevailing party in pursing such action.
16
17  (Motion for Default Judgment (#9) Exhibit A at 3) (emphasis added).  Since Access is a third-party

18  beneficiary to the TCI/CDA Agreement, Access may enforce the contract terms.  RESTATEMENT

    (SECOND) OF CONTRACTS § 304.
19
20         Courts typically use a two-step process when determining fee awards.  Fischer v. SJB-P.D.

21  Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).  First, the Court must calculate the lodestar amount "by

22  taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable

23  hourly rate." Fischer 214 F.3d at 1119.  Also, other factors should be taken into consideration such

24  as special skill, experience of counsel, and the results obtained. Morales v. City of San Rafael, 96

25  F.3d 359, 364 n.9 (9th Cir. 1996).  "The party seeking an award of fees should submit evidence

26  supporting the hours worked and rates claimed . . . [w]here the documentation of hours is inadequate,

27  the district court may reduce the award accordingly. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

28  Second, the Court "may adjust the lodestar, [only on rare and exceptional occasions], upward or

downward using a multiplier based on factors not subsumed in the initial calculation of the lodestar.'"   Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000).

Access is entitled to its reasonable attorneys' fees and costs.  At the hearing, Access presented detailed itemized billing statements.  Based on the specialization of many of these attorneys, the Court finds that the various lawyer's hourly rates charged and hours worked were reasonable.  The Court finds that Access is entitled to $526,397.54 for attorneys' fees and costs. This number is calculated by adding: (1) CDA's alleged liability portion (44.1%) of the attorneys' fees and costs expended in the BellSouth settlement totaling $486,897.75;[4] with (2) CDA's alleged liability portion (44.1%) of the attorneys' fees and costs expended in resolving the FCC matter totaling $39,499.79.[5]

## CONCLUSION

The Court finds that Access is entitled to recover a total of $2,358,752.54 for its reasonable damages this matter.  The amount of $1,832,355.00 is attributable to a 44.1% paid by Access in damages arising out of CDA's misconduct, and $526,397.54 is attributable to a 44.1% amount paid in attorneys' fees and costs in resolving this matter.

The District Court referred the case to the "Magistrate Judge for a hearing on . . .two issues and for the preparation of proposed findings of fact and recommendations."  Order (#12) at 3. Access submitted to the Court, after the hearing, a proposed Findings of Fact and Conclusions of Law.  The Court has modified Access' proposed Findings of Fact and Conclusions of Law to conform with this Report and Recommendation.  The Court recommends that the Findings of Fact and Conclusions of Law attached to this Report and Recommendation be adopted.

## RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

---

[4] $486,897.75 is a 44.1% part of the total $1,104,076.54 amount expended on attorneys' fees for the BellSouth lawsuit.

[5] $39,499.79 is a 44.1% part of the total $89,568.70 amount expended on attorneys' fees to resolve the FCC matter.

1    IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the
2  Plaintiff's Application for Entry of Default Judgment (#9) be **GRANTED** in the amount of
3  $2,358,752.54.

4    IT IS FURTHER RECOMMENDED that the District Court adopt the Findings of Fact and
5  Conclusions of Law attached to this Report and Recommendation.

6               **NOTICE**

7    Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must
8  be in writing and filed with the Clerk of the Court on or before March 24, 2008**. The Supreme
9  Court has held that the courts of appeal may determine that an appeal has been waived due to the
10  failure to file objections within the specified time.  <u>Thomas v. Arn</u>, 474 U.S. 140, 142 (1985).  This
11  circuit has also held that (1) failure to file objections within the specified time and (2) failure to
12  properly address and brief the objectionable issues waives the right to appeal the District Court's
13  order and/or appeal factual issues from the order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d
14  1153, 1157 (9th Cir. 1991); <u>Britt v. Simi Valley United Sch. Dist.</u>, 708 F.2d 452, 454 (9th Cir. 1983).

15    DATED this   11th  day of March, 2008.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge

- 8 -